IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,            Case No. 3:17CR444

       Plaintiff

     v.                                      ORDER

Lloyd Turks,

       Defendant

      In this criminal case, defendant Lloyd Turks faces five drug charges under 21 U.S.C. § 842. The government alleges, in part, that Turks sold its informant a mixture containing Schedule I controlled substances U47700 and acetyl fentanyl and analogue controlled substances cyclopropyl fentanyl and methoxyacetyl fentanyl and that the mixture caused a near-fatal overdose.[1]

      Pending are Turks's motion for an order authorizing independent blood testing (Doc. 58) and his motion to produce witnesses for trial and make available witnesses who are amenable to pretrial interviews (Doc. 69). For the reasons that follow, I deny both motions, the latter without prejudice.[2]

---

[1] The government filed a superseding indictment on July 10, 2019 (Doc. 74), but the superseding indictment includes technical, rather than substantive, modifications.

[2] Also pending is Turks's motion in limine to exclude testimony from witnesses with specialized knowledge. (Doc. 55). I hold that motion in abeyance as to the government's proposed expert witness's testimony, as I will determine the admissibility thereof in a *Daubert* hearing. (*See* Doc. 64; Doc. 73 at 1). I deny the remaining requests in the motion as moot in light of the parties' July 9, 2019 joint status report. (Doc. 73).

1

**Background**

On August 22, 2017, law enforcement stopped a vehicle just north of Dayton, Ohio, and found drugs – including methamphetamine, cocaine, and, according to Turks, fentanyl – in the car.[3] (Doc. 69 at 5; *see also* Doc. 44 at 3).[4] Turks was not involved in the Dayton drug deal, but the vehicle's occupants told law enforcement that they had previously bought drugs from him. Two of the vehicle's three passengers agreed to be confidential informants (CIs) in the government's investigation of Turks. (Doc. 44 at 3, n.2). Later that evening, the CIs participated in a controlled buy and purchased cocaine from Turks while under government surveillance. (Doc. 44 at 3).

The next day, on August 23, 2017, "[t]emptation apparently struck," and, on his or her own and not as part of a controlled buy, one CI bought more drugs from Turks. (*Id.* at 4). The CI subsequently overdosed in his or her hotel room, where the other CI found the overdose victim and called emergency personnel. (*Id.*).

One day later, on August 24, 2017, the overdose victim participated in another controlled buy, asking Turks for more of the substance from the previous day. (Doc. 44 at 5). Turks agreed and provided the victim 6.83 grams of a mixture containing U47700, acetyl fentanyl, cyclopropyl fentanyl, and methoxyacetyl fentanyl. (*See id.*). Authorities then arrested Turks. (*See id.*).

---

[3] I take the background facts from the parties' respective briefs as, except where indicated, the facts are not in dispute, and the parties identify no evidence of the facts in the record.

[4] The government incorporates by reference its opposition brief (Doc. 44) to Turks's previous motion for disclosure of information withheld in discovery (Doc. 38). (*See* Doc.71 at 3).

The government later sent a sample of the victim's blood to Axis Forensic Technology (AFT) for testing.[5] AFT's tests detected the presence of that same substances in the victim's blood as those in the mixture Turks sold in the August 24, 2017 controlled buy. (*See* Doc. 44 at 5; Doc. 53 (filed *ex parte*)). Only .5 mL of the victim's blood remains after the testing. (Doc. 73 at 2).

## Discussion

### I. The Request for Independent Blood Testing

Turks asks that I authorize the coroner's department to release the remaining blood evidence for testing at an independent laboratory. He asserts that AFT's tests are unreliable because AFT did not test for heroin in addition to fentanyl and fentanyl analogues. (*See* Doc. 58 at 2).

I will deny this request.

Turks presents no testimony or other evidence casting doubt on the reliability of AFT's testing methods. Instead, he asks me to accept his own speculative suppositions about the propriety of AFT's testing methods. He contends, in effect, that such guesswork suffices to authorize independent testing. (*See* Doc. 53; Doc. 55 at 2). Moreover, the parties do not dispute that the testing that Turks requests "will consume the remainder of the blood evidence." (Doc. 73 at 3).[6]

---

[5] The Ohio Bureau of Criminal Investigation also performed testing not challenged in the pending motions. (*See* Doc. 73).

[6] Previously, the government raised objections related to the independent lab's reliability in performing analysis on such a small sample of blood. The parties indicated in their July 9, 2019 status report that the government no longer has such *Daubert* concerns but continues to object to the testing on the grounds described above. (Doc. 73 at 2-3).

Turks has not presented grounds warranting the extraordinary remedy he seeks, *i.e.*, ordering a further test that would consume all of the remaining blood sample. Moreover, as noted, he offers no reason to order independent testing without proof undermining AFT's tests and results. I therefore reject his motion for such testing.

## II. The Request for Witness Identification

Next, Turks asks that I "order the Government to produce certain witnesses for trial whose identities and contact information were withheld from the defense[.]" (Doc. 69 at 1). He further asks "to inquire of every witness whose identity has been withheld whether the witness would be willing to have an interview before trial[,]" and, thereby, learn their names and contact information. (*Id.* at 7). The allegedly withheld individuals include:

- Any of the informants who were involved in any of the counts in the indictment;
- The person who found the overdosing informant in a hotel room and directed law enforcement to where controlled substances were hidden under a toilet seat.
- The person in the car with the informant who allegedly made a controlled buy on August 22, 2017.
- Everyone who was in the car that the Ohio Highway Patrol stopped on August 22, 2017.
- The individual in Dayton who sold drugs to an informant on August 22, 2017, along with the seller's associates who were also present.

(*Id.* at 4-5).[7]

### A. Non-Informants

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the government is under a general duty to disclose evidence favorable to the accused." *United States v. Presser*, 844 F.2d 1275, 1280

---

[7] At the outset of his motion, Turks asks to learn the identities of the person who found the overdosing informant in the victim's hotel room and the passengers in the August 22, 2017 traffic stop only, but he includes this broader request at the end of his motion. (*See* Doc. 69 at 1, 4-5).

4

(6th Cir. 1988). The Jenks Act, 18 U.S.C. § 3500, however, limits the government's disclosure obligation and bars from pretrial discovery any "statement or report . . . which was made by a government witness or prospective government witness[.]"

Accordingly, unless Turks can show that the government's failure to provide him access to the individuals whose identities he seeks violates its *Brady* duty, the Jencks Act prevents him from discovering that information. He makes no such showing.[8]

Moreover, insofar as the government plans to call these individuals as witnesses at trial, it is "entitled to keep [their] names and whereabouts private." *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993). Indeed, "[o]rdinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002) (quoting *Perkins*, *supra*, 994 F.2d at 1190 (internal quotations and additional citation omitted)).

I therefore deny Turks's motion to the extent it seeks information about and to compel the appearance of any non-informants.[9]

---

[8] *Brady* creates a post-trial remedy, not a pretrial right to pretrial discovery. *E.g.*, *United States v. Moore*, 439 F.2d 1107, 1108 (6th Cir.1971) ("*Brady* did not deal with pretrial discovery. It concerned only prosecutorial suppression of evidence known to be crucial to the defense of the accused."); *United States v. Short*, 671 F.2d 178, 187 (6th Cir.1982) ("Brady may be invoked only when the trial has been completed .... [and it] becomes a concern of the court after the trial has ended.").

After nearly forty years of appearances by the Assistant U.S. Attorneys in hundreds cases before me, I can recall no instance in which a defendant filed a post-trial *Brady* motion, much less one that went anywhere. This, I believe is testament to the fidelity of the commitment of those lawyers and the office which they represent to *Brady* and its requirements.

[9] These individuals include the seller in the Dayton drug deal, that seller's associates, and the non-informant passenger in the car during the August 22, 2017 traffic stop.

5

## B. Informants

Turks further argues that the government must disclose its informants' identities under *Roviaro v. United States*, 353 U.S. 53 (1957).

In *Roviaro*, *supra*, 353 U.S. at 60-61, the Supreme Court held that the government's usual privilege to protect an informer's identity "must give way" where the informer's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" Where a defendant seeks to learn an informant's identity, the court must "balance[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62.

Turks argues that *Roviaro* applies here because the confidential informants can testify that the fentanyl allegedly purchased in the Dayton drug deal or drugs found in the victim's hotel room (which Turks allegedly did not sell the victim) caused the overdose. (Doc. 69 at 2, 3).

The government responds that "it is clear from the facts that the overdose victim who survived as well as the individual who located the leftover drugs will likely be needed at trial. As such, those witnesses would be disclosed in some manner prior to trial consistent with local practice." (Doc. 70).

Accordingly, *Roviaro*, *supra*, 353 U.S. 53, does not apply. In that case, the informant neither testified nor appeared at trial. *See United States v. Smith*, 941 F.2d 1210, 1991 WL 158699, *10 (6th Cir.) ("*Roviaro* . . . involved [a] nondisclosure[] that had the effect of preventing informants from being called as witnesses and testifying at trial—where they *might* have been a material witness or *might* have presented testimony relevant or essential to the case."). And the Sixth Circuit has explained that "where the informant testifies, the government need not have disclosed his identity prior to trial." *Perkins*, *supra*, 994 F.2d at 1190-91 (citing

*United States v. Pennick*, 500, F.2d 184, 186-87 (10th Cir.)); *see also United States v. Rodgers*, 991 F.2d 797, 1993 WL 94051, *3 (6th Cir.) (finding no prejudice to defendant where the government "did make assurances that all confidential informants would be called at trial," the government presented a confidential informant at trial, and defense counsel "ably cross-examined" the informant).

Turks suffers no prejudice if I do not require the government to disclose the withheld witnesses' identities before trial.[10] And the government's assurances that the informants will appear at trial convinces me that I need not compel their appearance. Turks's motion, therefore, is, at worst, premature and, at best, unnecessary, and I deny the motion without prejudice to his right to renew at trial. [11]

---

[10] I also reach this result out of concern for the CIs' safety.

The confidential informant "privilege is designed to shield the informant from harm that might arise from his or her cooperation. But so long as some potential harm from further disclosure or publication remains, the government retains an interest in non-disclosure and the privilege may still apply." *United States v. Sierra-Villegas*, 774 F.3d 1093, 1098 (6th Cir. 2014).

Here, the government presented testimony at a detention hearing that both confidential informants received threats from Turks or his associates. (*See* Doc. 32 at 29:4-6, 11-12, 14-21).

[11] As all who routinely appear in criminal cases in Toledo know, the government, at the urging of the Judges of this Division, generally provides discovery well beyond the strictures of Fed. R. Crim. P. 16. After all, the well-informed defense attorney is a better advocate for the defendant; when the government's cards are spread upon the table, defense counsel can better read the client's hand and better balance the risk of raising the stakes or folding then. Though thereby the well-informed attorney may be viewed as the prosecutor's best friend, he or she is, in fact, and more importantly, the client's staunchest benefactor and guardian.

Finally, though by then it rarely is necessary, my standard trial order requires disclosure previously undisclosed of witness identities one or two weeks before trial and production of previously undisclosed witness statements forty-eight hours before their testimony. Such production serves everyone's interest, as it avoids the disruption and delay that would occur if I had to, as Jencks requires, review often numerous and voluminous pretrial statements after a witness has testified.

**Conclusion**

It is, therefore,

ORDERED THAT

1. Defendant Turks's motion in limine to exclude testimony from witnesses with specialized knowledge (Doc. 55) be, and the same hereby is, denied in part as moot and held in abeyance as to the testimony of Dr. Jon Sprague;

2. Defendant Turks's motion for order authorizing independent blood testing (Doc. 58) be, and the same hereby is, denied; and

3. Defendant Turks's motion to produce witnesses for trial and make available witnesses who are amenable to pretrial interviews (Doc. 69) be, and the same hereby is, denied without prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

When, though, the government, as here, expresses concerns about witness safety, we Judges can and do employ Rule 16, among other measures, to avoid that risk.