# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:17CR444 |
| Plaintiff | |
| v. | **ORDER** |
| Lloyd Turks, | |
| Defendant | |

In this criminal case, defendant Lloyd Turks faces five drug charges under 21 U.S.C. § 842.

In a July 26, 2019 order (Doc. 75), I denied Turks's motion for an order authorizing independent blood testing (Doc. 58) and his motion to produce witnesses for trial and make available witnesses who are amenable to pretrial interviews (Doc. 69).[1]

Pending are two motions to reconsider: 1) Turks's motion to reconsider order denying pretrial interviews with amenable witnesses (Doc. 76) and 2) Turks's motion for issuance of subpoena and for reconsideration of order denying independent testing (Doc. 77). For the reasons that follow, I deny both motions.

## Discussion

I detailed the facts at length in my previous opinion and will not repeat them here. *See Turks*, *supra*, 2019 WL 3387770 at *1.

---

[1] I also denied, in part, Turks's motion in limine to exclude testimony from witnesses with specialized knowledge (Doc. 55). (Doc. 75).

## I. Motion to Reconsider Order for Pretrial Interviews

First, Turks asks me to allow his counsel to interview "percipient witnesses[,]" including:

- Any of the informants who were involved in any of the counts in the indictment;
- The person who found the overdosing informant in a hotel room and directed law enforcement to where controlled substances were hidden under a toilet seat;
- The person in the car with the informant who allegedly made a controlled buy on August 22, 2017;
- Everyone who was in the car that the Ohio Highway Patrol stopped on August 22, 2017; and
- The individual in Dayton who sold drugs to an informant on August 22, 2017, along with the seller's associates who were also present.

(Doc. 76 at 2-3).

In my initial order, I held that Turks may not learn these witnesses' identities or access their contact information because: 1) the Jencks Act, 18 U.S.C. § 3500, authorizes the government to keep that material secret; 2) under *Brady v. Maryland*, 373 U.S. 83 (1963), the government need not disclose such information unless Turks can show that the witnesses have exculpatory information; and 3) as to the informant-witnesses, Turks has not overcome the confidential informant privilege announced in *Roviaro v. United States*, 353 U.S. 53 (1967).[2] *Turks*, *supra*, 2019 WL 338770 at *3-*4.

Turks's motion contains no new facts or authority. Instead, Turks asserts that his "right to conduct his own investigation extends beyond the scope of information covered" under the *Brady* rule and the Jencks Act. (Doc. 76 at 1).

I disagree.

---

[2] I also noted that, although the government may keep witnesses' identities secret until calling them at trial, "my standard trial order requires disclosure [of] previously undisclosed witness identities one to two weeks before trial and previously undisclosed witness statements forty-eight hours before their testimony." *Turks*, *supra*, 2019 WL 3387770 at *4, n.11. In light of the government's assurances that it would disclose its witnesses consistent with local practice, I concluded that Turks's motion was "at worst, premature, and at best, unnecessary[.]" *Id.* at *4.

Although the government "can choose to disclose more than" what *Brady* requires, "it is under no obligation to do so." *United States v. Hart*, 2013 WL 4041861, *2 (E.D. Mich.) (cited by defendant). Moreover, the Sixth Circuit has held that a district judge cannot "require a United States Attorney to deviate from [the] terms" of the Jencks Act "against his [or her] judgment." *United States v. Algie*, 667 F.2d 569, 571 (6th Cir. 1982); *see also Hart*, *supra*, 2013 WL 4041861 at *2 ("The court cannot order the prosecution to deliver its entire file to Defendant.").

Accordingly, "unless Turks can show that the government's failure to provide him access to the individuals" he seeks to interview "violates its *Brady* duty," he cannot discover that information, pursuant to a protective order or otherwise.[3] *Turks*, *supra*, 2019 WL 3387770 at *3; *see also Hart*, *supra*, 2013 WL 4041861 at *2. As stated in my previous order, 2019 WL 3387770 at *3, "[h]e makes no such showing."[4]

I will therefore deny the first motion to reconsider. (Doc. 76).

## II. Motion to Reconsider Order for Independent Blood Testing

Next, Turks asks me to reconsider my previous order insofar as I declined to authorize the Lucas County Coroner to release blood evidence from the overdose victim for independent testing. Now, he asks that I authorize a subpoena for that evidence.

This request is baseless.

Turks argues that I should allow him to order tests for heroin, which he apparently did not sell the overdose victim, from an independent laboratory because the government-ordered

---

[3] Turks suggests that I demand that the government produce the witnesses' information under an "attorneys' eyes only" protective order. (Doc. 76 at 3).

[4] I noted in my previous order, and emphasize here, that "*Brady* creates a post-trial remedy, not a pretrial right to pretrial discovery." *Turks*, *supra*, 2019 WL 3387770 at *3, n.8 (internal citations omitted).

3

analysis tested for fentanyl and its analogues only. I rejected that same argument in my previous order, emphasizing that the independent test will "consume all of the remaining blood sample." *Turks*, *supra*, 2019 WL 3387770 at *2.

Turks points to no newly revealed facts supporting his request. And the only authority he cites is an entire chapter of the Ohio Revised Code, which, he submits, "states no privilege belonging to a coroner to withhold whole blood that is not connected to a deceased person or an autopsy." (Doc. 77 at 4 (citing Ohio Rev. Code ch. 313)). But that chapter likewise does not compel me to order the coroner to release the victim's blood for independent testing.

Accordingly, for the reasons stated in my previous order, *Turks*, *supra*, 2019 WL 3387770 at *2, I deny Turks's second motion to reconsider.

### III. Sanctions

I strongly dislike and disfavor motions to reconsider. Indeed, such motions are disfavored generally. *See DirecTV, Inc. v. Kruse*, 2004 WL 1490437, *1 (N.D. Ohio) (Carr, J.). To deter improper motions to reconsider, I routinely have imposed, and will continue to impose, sanctions.

Presumably, counsel expects payment for time expended on the pending motions pursuant to his appointment under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. But counsel has wasted his client's time, and mine, by asking me to reconsider my previous order, repeating the same refrain in a different tune. Accordingly, compensation under the CJA is inappropriate here because counsel's services were not "necessary for adequate representation." *See* 28 U.S.C. § 3006A(a).

**Conclusion**

It is, therefore,

ORDERED THAT

1. Defendant Turks's motion to reconsider order denying pretrial interviews with amenable witnesses (Doc. 76) be, and the same hereby is, denied;

2. Defendant Turks's motion for issuance of subpoena and for reconsideration of order denying independent testing (Doc. 77) be, and the same hereby is, denied; and

3. Counsel shall omit from any claims for payment pursuant to the Criminal Justice Act, 28 U.S.C. 3006A(d)(5), time expended on the motions adjudicated herein.

/s/ James G. Carr
Sr. U.S. District Judge